1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10  PEDRO GUTIERREZ,

11              Petitioner,              No. CIV S-06-1905 LKK CHS P

12        vs.

13  KEN CLARK, et al.,

14              Respondents.            FINDINGS AND RECOMMENDATIONS

15  _____/

16              Petitioner Pedro Gutierrez is a state prisoner proceeding pro se with a petition for

17  writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner attacks his conviction in the

18  Sacramento County Superior Court, Case No. CM015323, of two counts of lewd and lascivious

19  acts upon a child under the age of 14 years and one count of failing to register as a sex offender.

20  Petitioner raises the following claims: (1) that he was denied a fair trial as a result of being

21  excluded from attending an in camera proceeding; (2) that he received ineffective assistance of

22  trial counsel; (3) that the trial court denied petitioner's right to a Marsden hearing; and (4) that

23  he received ineffective assistance of appellate counsel.  Upon careful consideration of the record

24  and the applicable law, the undersigned will recommend that petitioner's petition for habeas

25  corpus relief be denied.

26  /////

1

## FACTUAL AND PROCEDURAL BACKGROUND[1]

For about a month around August 2000, defendant and his girlfriend, R., lived with defendant's sister S., her two sons, and her eight-year-old daughter, A., the victim. One day, when S. took her sons and nephew to church, A. stayed home with defendant and R. A. was coloring in her room when defendant came in and knelt down beside her. He put his hand up through the leg of her shorts and penetrated the child's vagina. After about a minute, A. said she had to go to the bathroom and, after leaving the bathroom, went outside to ride her bicycle. She stayed outside until her mother came home. During the incident defendant told A. "not to tell anybody."

Later the same day, while A. was sleeping on her bed, defendant again put his hand under A.'s shorts and rubbed her vagina. When he left the room, A. wrapped herself tightly in her blanket. Defendant returned and tried to pull the blanket off. When she told him to stop, he left the room and she shut the door.

A. first told her cousin and wanted her cousin to tell her cousin's mother who was A.'s Aunt M.

About February 2001, Aunt M. told A.'s mother, S., about the incidents with defendant after which S. spoke with A. who confirmed that defendant had molested her. S. confronted defendant on the telephone but hesitated to report the molests because of family pressure, particularly from her mother.

On March 16, 2001, defendant was arrested after fleeing from pursuing officers. He waived his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694], and admitted that he had been living in the area with his girlfriend, C., since April 2000 but said he lived primarily with his mother in her home. Defendant said that he, his former spouse R. and his daughter P. lived with S. around August 2000 for a month. He also said that a month before his arrest, S. had accused him of molesting A. The officer confirmed with S. that P. was also living at her house with defendant and R.

The parties stipulated that defendant was required by law to register as a sex offender due to a prior conviction for a lewd act with a child under the age of 14 years. Documents introduced by the prosecution reflected that defendant had been advised of the registration requirement and advised that he had five working days to notify law enforcement of an address change. The documents showed that he resided at his mother's address. When booked,

---

[1] The facts are taken from an unpublished opinion of the California Court of Appeal, Third Appellate District, C043378, lodged with this court on December 29, 2006 as Lodged Doc. No. 4 at 1-14.

2

defendant listed his girlfriend C.'s address. There was no record that defendant ever notified law enforcement that he resided at the home of S. or C.

After the prosecution first announced it had no more witnesses, defense counsel said that he had spoken with defendant and defendant had decided not to testify and that there would not be a defense case. The prosecutor decided to present the testimony of two other witnesses the following morning.

Prior to the two witnesses testifying, defendant admitted that he had been convicted of a violation of section 288, subdivision (a), which subjected him to registration pursuant to section 290. The two witnesses testified and after their testimony, the court informed the jury that the parties had stipulated that defendant was required to register as a sex offender because he had previously been convicted of violating section 288, subdivision (a). The court told the jury that the presentation of evidence had been completed and that after a break, the attorneys would argue the case and the court would instruct the jury.

Thereafter, outside the presence of the jury, the court noted for the record that prior to commencement of the morning proceedings, defense counsel, Denny Forland, "indicated he had certain matters he would like to place on the record." Defendant was present. Forland stated that he felt "compelled" to set forth certain matters.

First, Forland explained that the prosecutor offered two plea agreements during the course of the proceedings. The first occurred prior to the preliminary examination and allowed defendant to plead to one count of section 288, subdivision (a) and admit the strike prior. Defendant had rejected the offer. Forland stated there was a second offer after the information was filed whereby defendant could plead to one count of section 288, subdivision (a) and all other counts and allegations would be dismissed. Forland recounted that defendant, maintaining his innocence, also rejected this offer.

Second, Forland explained for the record that he urged defendant to plead no contest to failure to register so that the jury would not learn that defendant had previously been convicted of violating section 288, subdivision (a) and because Forland believed that defendant's registration at his mother's was insufficient. Defendant rejected this suggestion. Forland stated for the record that based on defendant's refusal, Forland had asked S. and A. "specific questions about their knowledge of [defendant's] prior conviction, prison, et cetera." Forland also stated, "If this matter [failure to register] was severed out by a plea, I certainly would not have asked those questions. I would have made a motion in limine to prohibit all references to prison priors, 288's, et cetera, had Count III been severed out for one reason or another, and I chose the strategy yesterday because of proof that would be coming in on

Count III."

Third, Forland explained that defendant asked that his mother testify on his behalf because "he maintains that she was residing in S[.]'s house during the time frame of the incident." Forland's investigator spoke to defendant's mother and "she did not indicate with as much surety as [defendant] that she was residing there. In fact, we got the impression that she was not residing there during this time frame." Forland concluded that there was no credible evidence that defendant's mother was in the house, noting that the testimony presented thus far indicated that defendant's mother was not staying at S.'s house. Forland also noted that defendant's mother was "exerting pressure on S [.] and A[.] not to testify" and that he was "uncertain as to exactly what [defendant's mother] would say on the stand, and certainly her opinion about whether something occurred or not would be totally inadmissible and inappropriate to present to a jury." Forland chose not to call defendant's mother to testify.

Finally, Forland explained that defendant "insisted that we attempt to contact and subpoena R[.] and P[.], his ex-wife or girlfriend, and his 18 year old daughter." Forland stated that "[a]ll information that we obtained was that they were somewhere in the State of Washington, at various times had been in custody and were out of custody, and no one that we spoke to knew their whereabouts." Forland stated that all attempts to locate them had been unsuccessful.

The prosecutor confirmed for the court that the plea offers were made to Forland and were withdrawn when the trial date was confirmed.

Defendant then spoke and insisted that his mother, R. and P. were all residing with S. at the time of the offense. He claimed he was not receiving a fair trial and complained that he had not received a copy of a letter that he asked for written by someone named Bradon Hatch.

Forland replied that it was his practice to make a copy of everything a client requests although he could not specifically recall giving defendant a copy of the letter defendant was referring to. Defendant denied that he had a copy of Hatch's letter or copies from Forland of the items Hatch had given defendant. Defendant did not ask for substitute counsel.

After confirming there was nothing further, the court queried whether the prosecutor would be ready to argue after recess and the prosecutor responded affirmatively. The court adjourned but then reconvened in defendant's absence. The court stated for the record that it had met with counsel earlier that day and had reviewed and decided upon jury instructions and verdict forms. Both counsel confirmed that they had approved the instructions the

4

court planned to give. Forland then informed the court that defendant planned to testify and "basically say what he said briefly to the Court in the closed session. He wants to go over the police reports and question why C[.] C[.] was not here, why she wasn't called, why they didn't bring up the allegations that he had molested C[.]'s daughter to show that that was a lie, why we didn't go into the allegation that A[.] had originally reported that she had been molested a third time, why we didn't go into that, that he is getting railroaded by his public defender, and et cetera." The court noted and Forland agreed that defendant had the right to testify. Forland also complained that defendant "refused to put on his sweater, which will cover all of his tattoos." The court noted for the record that defendant was not present and recessed "until we have a determination as to whether the defendant will testify and until we have secured the courtroom."

After the recess, the court met with the prosecutor and defense counsel outside the presence of the jury. Defendant was not present. The following colloquy ensued:

"THE COURT: ... [¶] Mr. Forland, you were talking to the Court outside the presence of your client, and I am hesitant to proceed in any way without your client being present, but you have indicated that he wishes to testify, and you do not believe it is in his best interests to testify.... [¶] I intend to have him brought out here in any condition that he chooses to come out here in. [¶] I have referred to my authority. If he presents himself to be so disruptive as to interfere with the due processes of the court, I will have him removed from the court, and we will proceed in his absence, he will waive his right to be present, which is a constitutional right. He probably should be told that before he comes out here so that he knows if he can't behave, he will be removed, and we will proceed. [¶] So I know you have done everything you can, but I will ask you to go back in there one more time so he will know what I said.

"MR. FORLAND: Your Honor, what he wants to testify to puts me in a precarious position, because regarding his mother, his daughter, C[.] C[.]; because basically what he is doing now is, and what he wants to say, is that I have screwed him, and I have sold him down the river as part of the system. So what he now wants to do is testify to things that were not done on his behalf and that his public defender is not representing him correctly, and the only way that he feels he can get a fair trial is if he takes the stand on his own behalf and testifies regarding all types of things that were not brought up during the trial; but another concern I have is that he is going to say, 'My mom wasn't called as a witness, and she was there.' Well, my evidence would suggest that she wasn't there, so I am in a position where he is wanting things to be presented that I chose, my investigator and I chose, not to, so I am just not certain where that places me.

"THE COURT: The court has researched this a little bit, and it is the Court's position that [defendant] has a constitutional right to testify over your objection, and even if you believe that it is detrimental to him, there is some case law; and I will cite People versus Blye for that proposition, and in People versus Manson, the recommendation was that he should first testify in camera to avoid possible Aranda-Br[ ]uton problems.... [¶] ... [A]s I said earlier, if he becomes disruptive, he will be removed; and as I said, there is lots of case law that says even if it would be counter-productive to his case or tantamount to a confession, he has the right to come out and testify. I will advise him that it may implicate him in other crimes, which could amount to new charges being filed, which could amount to a third strike, which could ultimately be a life sentence; although in this matter it doesn't seem like he is going to be dissuaded, from what you told me.

"MR. FORLAND: I do not think[ ] so, Judge. [¶] I guess what I struggle with is, I don't even know what areas of-I know what areas he wants to talk about, and I am not certain-I have never had this happen to me before in all the years I have been doing this, as to how we get to the subject; because I don't think I want to ask him the questions, because I don't think they should be asked, and they are inappropriately asked. So I guess I am asking for some suggestion by Ms. Passmore [the prosecutor] and the Court as to how we get to the subjects.

"MS. PASSMORE: We could have a 402 hearing on the relevancy, what he wants to testify to, and I would object to it, and the Court could rule.

"MR. FORLAND: I think that is a good course. [¶] ... [¶]

"THE COURT: I am not sure a 402 hearing applies to the defendant when counsel doesn't know what he is going to say in advance.

"MS. PASSMORE: Well, he knows about the areas of going into with other victims, uncharged acts. That I don't think is relevant to this case.

"THE COURT: It is a question of how much I can control him. I am willing to allow Mr. Forland latitude in simply asking his client to [s]ay whatever he thinks he wants to say in front of the jury, and the authority for that is People versus Johnson, and although that applies to a situation where counsel believes that the client is about to commit perjury and has an ethical duty not to present perjury to the Court, there is that one out because of the constitutional right to testify, that the client has the right, and it is not error; so I think this is as close to that as we can come. [¶] I think basically Mr. Forland is saying he does not believe his client will tell the truth when he takes the stand; is that correct?

"MR. FORLAND: It is.

"THE COURT: All right, let's bring [defendant] in."

Outside the presence of the jury, the court voir dired defendant about his decision to testify. The court advised defendant that he had a competent and experienced attorney who did not believe it was in defendant's best interest to testify but that defendant had the right to testify in any event. Defendant stated that he understood. The court further advised defendant that if he said anything that incriminated him in the present or uncharged crimes, additional charges could be brought against him. Defendant stated that he understood. The court advised defendant that if he was convicted in the present matter and was convicted of another strike prior, he was facing a potential prison term of life. Defendant stated that he understood, adding "[T]hat is what I was facing when I was first arrested, that three strikes, then they offered me 28 years, 13 years, eight years. I was not guilty. I am not guilty. I wasn't represented right. I want the jury to know." The court responded, "This is not the time to T-off on your attorney. You are going to take the stand, he will ask you questions. If you want to do something outside the presence of [the] jury with regards to your attorney, we can do that, but I don't want you criticizing Mr. Forland's representation of you in front of the jury. That wouldn't be in your benefit." Defendant insisted that he was not "represented right" but never asked for substitute counsel. After confirming that he was ready to take the stand, defendant asked, "Why is there two cops now?" The bailiff explained, "It is for your safety and mine." At the prosecutor's suggestion, the court advised defendant that he was not allowed to ask questions of either defense counsel or the prosecutor but must only answer questions.

After the jury entered the courtroom, Forland stated, "Your Honor, at the defendant's request, we would ask to re-open" and that it was defendant's "desire to testify." Defendant took the stand and Forland began:

"Q. Mr. Gutierrez, as I understand, it is your desire to testify in your own behalf?

"A. Yes, sir.

"Q. You are doing so against my advice; is that correct?

"A. Yes, because-yeah.

"Q. Okay, and what do you want to tell us?

"A. I just want to tell the jury that I have been misrepresented in this trial, that all the evidence against me, everything was brought against me-I have three witnesses that weren't present in my behalf. These allegations are not true. [¶] And another thing I would like to show you in this police report here, my girlfriend, C[.] C[.], accused me of molesting her-the 9-year-old daughter too,

and my two-year-old daughter. Why wasn't this presented to you guys? Okay. [¶] This trial is not fair. I am not getting a fair trial. [¶] I have been convicted once before, the same thing. Same, same thing, man, same kind of trial. I am not guilty. [¶] I just want the jury to understand that my mother was present here yesterday, 8:00 o'clock in the morning, to testify on my behalf. They didn't let her in the door. Why? Because they didn't want you guys to hear the evidence on my behalf; and another thing, A[.] supposedly was sleeping in her bedroom. My daughter, P[.], came down to Washington with me and R[.] J[.] They stayed in that bedroom the whole time she was here, for about a month. [¶] A[.] slept with her mother and her two-year-old brother in the bedroom. My mother was present there at that time too, but they say she wasn't. She slept with J[.], which is S[.]'s older son, and me and R[.] slept in the back room, which was the garage turned into a bedroom, okay? [¶] I just want the jury to understand that this trial is not fair. I am not a child molester. I am not a rapist. I am not a ped[o]phile, and I want the jury to understand that I don't like to be accused of that, okay? [¶] That is all I got to say, Mr. Forland."

Forland asked what other witnesses defendant wanted called on his behalf besides his mother and he answered his daughter and former girlfriend, R. Forland asked if defendant knew where they were located and defendant answered somewhere in Washington. When Forland asked whether defendant had an address, defendant stated, "I have been sitting in the county jail for 19 months. Other guys have the same cases, they get through their trial in four or five months. Look at me. What is going on? Why have I been sitting in the county jail for 19 months? They finally come up with this. They don't even represent me right, no witness on my behalf. [¶] You seen it when they come in here, testified against me. I am not guilty. [¶] That is all I want to s[ ]ay to the jury."

On cross-examination, defendant admitted that when interviewed by an officer, he stated that he and R. had lived with S. and A. during August 2000. Defendant claimed that the officer's report reflects that defendant's mother was no longer living in her home but instead with S. The prosecutor pointed out that defendant was arrested in March 2001 and at that time, defendant's mother was living with S. Defendant did not answer the prosecutor's question whether he had mentioned to the officer that defendant's mother was living with S. in August 2000. When the prosecutor insisted on an answer, referring to the fact that the interview with the officer was videotaped, defendant complained that the same had not been asked of S. and A. who would both testify that defendant's mother was present in August 2000. The prosecutor noted that both S. and A. had testified who was present in August 2000. Defendant admitted telling the officer that A. was an honest girl and could not think of a reason for her to lie but defendant insisted that the allegations were not true and that any child would report it to her mother if he had.

1    A jury convicted petitioner on October 18, 2002 of two counts of lewd and

2  lascivious acts upon a child under the age of 14 years and one count of failing to register as a sex

3  offender.  Petition at 1; Lodged Doc. No 1. at 2.  On February 18, 2003, petitioner appealed that

4  conviction to the California Court of Appeal, Third Appellate District.  Id.  That court affirmed

5  petitioner's conviction on September 23, 2004.  Lodged Doc. No. 4 at 27.  On November 8,

6  2004, petitioner sought review from the California Supreme Court.  Lodged Doc. No. 5 at 1.

7  That court denied that request on December 24, 2004.  Lodged Doc. No. 6 at 1.

8    Following that denial, petitioner brought a petition for writ of habeas corpus in

9  the Butte County Superior Court.  Lodged Doc. No. 7 at 1.  That petition was denied on August

10  3, 2005.  Lodged Doc. No 8 at 1.  Petitioner then petitioned the California Court of Appeals,

11  Third Appellate District on September 9, 2005.  Lodged Doc. No. 9 at 1.  That petition was

12  denied on September 23, 2005.  Lodged Doc. No. 10 at 1.  Petitioner petitioned the California

13  Supreme Court on December 29, 2005.  Lodged Doc. No. 11 at 1.  That petition was denied on

14  July 26, 2006.  Lodged Doc. No. 12 at.  Petitioner subsequently petitioned this court on August

15  24, 2006.

16                                    ANALYSIS

17  A.  Standards of Review Applicable to Habeas Corpus Claims

18    A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

19  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

20  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

21  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

22  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

23  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

24  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

25  (1972).

26    This action is governed by the Antiterrorism and Effective Death Penalty Act of

1   1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

2   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

3   habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

11   28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

12   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

13          The court looks to the last reasoned state court decision as the basis for the state

14   court judgment.[2]  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  When it is clear

15   that a state court has not reached the merits of a petitioner's claim, or has denied the claim on

16   procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court

17   must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v.

18   Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

19   /////

20   B.  Petitioner's Claims

21          I.  Exclusion of Petitioner at In Camera Hearing

22          Petitioner claims that his Fifth, Sixth and Fourteenth Amendment rights were

23   violated because the trial court excluded petitioner from an in camera hearing.  Petition at 4.

24

25          [2] For purposes of this review, the "last reasoned state court decision" is the September 23,
26   2004 opinion of the California Court of Appeals, Third Appellate District C043378, (hereinafter
     "Opinion") lodged with this court on December 29, 2006 as Lodged Doc. No. 4.

Specifically, petitioner claims that he was prejudiced by his exclusion from this hearing because his counsel "betrayed his confidences to the prosecutor and the trial court, and indicated petitioner intended to commit perjury" and because "if petitioner had been present... he would again have moved to have his attorney replaced."  Traverse at 10.  The California Court of Appeal rejected this claim with the following reasoning:

> Defendant first contends that the trial court conducted a hearing outside of his presence, violating his federal and state constitutional rights and statutory right to be personally present at all critical stages of the proceedings. Although we agree that defendant should have been present, we find the error harmless beyond a reasonable doubt.

> "A criminal defendant's federal constitutional right to be present at trial, largely rooted in the confrontation clause of the Sixth Amendment, also enjoys protection through the due process clause of the Fifth and Fourteenth Amendments [citation] ' "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge," ' but not ' "when presence would be useless, or the benefit but a shadow." ' [Citations.] Article I, section 15 of the California Constitution applies the same standard. [Citation.]" (*People v. Ochoa* (2001) 26 Cal.4th 398, 433, disapproved on another point in *People v. Prieto* (2003) 30 Cal.4th 226, 263, fn. 14.)

> Section 1043, subdivision (a), provides that a defendant "in a felony case shall be personally present at the trial" with certain specified exceptions inapplicable here.

> Section 977, subdivision (b), provides that a defendant charged with a felony "shall" be present at certain specified proceedings (arraignment, entry of plea, preliminary hearing, presentation of evidence before the trier of fact at trial, sentencing) and "shall be personally present at all other proceedings" unless he has waived his right to be present.

> "[T]he defendant's absence from various court proceedings, ' *even without a waiver,* may be declared nonprejudicial in situations where his presence does not bear a "reasonably substantial relation to the fullness of his opportunity to defend against the charge." '[Citations.]" (*People v. Johnson* (1993) 6 Cal.4th 1, 18.) "The burden is on the defendant to demonstrate that his absence prejudiced his case or denied him a fair and impartial trial." (*People v. Howard* (1996) 47 Cal.App .4th 1526, 1537, overruled on another point in *People v. Fuhrman* (1997) 16 Cal.4th 930, 947, fn. 11.)

> Relying on *People v. Blye* (1965) 233 Cal.App.2d 143 (*Blye* ), defendant argues that he clearly had a right to attend the in camera hearing during which defense counsel discussed defendant's

11

anticipated testimony with the court and the prosecutor. In *Blye,* defense counsel did not call the defendant to the stand or any other defense witness and thereafter explained at an in-chambers conference, in the absence of the defendant and in the presence of the prosecutor, the defendant's anticipated testimony and defense counsel's belief that the defendant planned to perjure himself. (*Id.* at pp. 147-148.) *Blye* stated that "[t]he test of the effect of absence of a defendant during part of a criminal trial is whether or not he was damaged [citation] or prevented from having 'a fair and just hearing of his case' [citation]." (*Id.* at p. 149.) *Blye* concluded that the defendant had been deprived of his right to object "to his exclusion from the witness stand" by being absent from the in-chambers conference and had not been fairly treated. (*Ibid.*)

Defendant claims the facts here are analogous to those in *Blye.* We disagree and find *Blye* distinguishable in one very important respect. Here, unlike *Blye,* defendant demanded to and was allowed to testify.

Defendant claims the in camera hearing involved his right to testify, and dealt with the scope, admissibility and manner of presentation of his testimony, defense counsel's attitude towards defendant and the assistance defense counsel intended to provide during defendant's testimony. Defendant argues his absence "deprived him of an opportunity to fully understand and appreciate the crucial issues that were addressed, since the proceedings he attended did not address all of the same issues, and certainly did not do so as clearly." He claims if he had attended the hearing, he probably would have asked for substitute counsel who would not have performed as poorly as Forland in examining defendant, in turn resulting in a different outcome at trial. He also says if he had attended the hearing he would have been alerted to the fact that he should not have testified about the other child molestation offenses. We will not join his speculations.

Defendant was present at that part of the hearing where defense counsel explained his tactics, strategy, and investigation. If there was ever a time to request substitute counsel, it was then. Further, when defendant took the stand and was asked an open-ended question that permitted a narrative answer, defendant knew at that time that counsel would not be questioning him as he had other witnesses. Again, defendant did not seek substitution of counsel. Defendant's claim, now on appeal, that had he heard defense counsel set forth defendant's anticipated testimony he would have sought substitution of counsel, is belied by the record. Moreover, a disagreement between defendant and counsel concerning defendant's decision whether to testify does not necessarily require substitution of counsel. (*People v. Brown* (1988) 203 Cal.App.3d 1335, 1340.)

Defendant's absence from the hearing did not preclude him from testifying. Counsel and the court considered the manner of presentation and the court ruled that defense counsel could

1   question defendant using the narrative approach. We thus conclude
    defendant's absence from the hearing did not impermissibly affect
2   defendant's ability to defend against the charges. (See *People v.*
    *Johnson, supra,* 6 Cal.4th at pp. 17-20.) We conclude defendant's
3   absence was harmless beyond a reasonable doubt.

4   Opinion at 15-18.

5           Under federal law, a criminal defendant charged with a felony offense has a

6   fundamental right to be present at every stage of the trial.  Illinois v. Allen, 397 U.S. 337, 338

7   (1970).  See also Kentucky v. Stincer, 482 U.S. 730, 745 (1987) ("a defendant is guaranteed the

8   right to be present at any stage of the criminal proceeding that is critical to its outcome if his

9   presence would contribute to the fairness of the procedure").  This right derives from the

10  Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and

11  Fourteenth Amendments.  United States v. Gagnon, 470 U.S. 522, 526 (1985).  However,"th[e]

12  privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a

13  shadow.'"  Stincer, 482 U.S. at 745 (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-07

14  (1934)).  See also Gagnon, 470 U.S. at 527 (defendants' absence did not violate the Due Process

15  Clause where their presence was not needed to "ensure fundamental fairness" and they could not

16  have added to or gained from being present at the conference); Campbell v. Rice, 408 F.3d 1166,

17  1172-73 (9th Cir. 2005) (violation of petitioner's due process rights by his exclusion from private

18  in-chambers hearing where the trial court concluded that his attorney did not have a conflict of

19  interest was harmless error).  The right to be present, like many other constitutional rights, may

20  be waived.  See Gagnon, 470 U.S. at 529; Taylor v. United States, 414 U.S. 17, 19-20 (1973).

21          The California Court of Appeal correctly concluded that the denial of the right to

22  be present alleged by petitioner was subject to harmless error review.  See Rushen v. Spain, 464

23  U.S. 114, 117 (1983) (defendant's exclusion from ex parte communication between the judge

24  and a juror was a trial error that was subject to harmless error analysis); Hovey v. Ayers, 458

25  F.3d 892, 903 (9th Cir. 2006) (petitioner's exclusion from competency hearing was harmless);

26  Campbell, 408 F.3d at 1172.  Upon review, there is no reason to believe that petitioner's trial

1   would have ended differently if petitioner had been present at the hearing.

2          Prior to the in camera hearing, petitioner's counsel noted for the record, with

3   petitioner present, that petitioner had been previously offered two plea agreements, that

4   petitioner refused to plead no contest to the failure to register charge, that there was a conflict

5   between counsel and petitioner over the testimony of petitioner's mother, and that counsel had

6   been unable to locate witnesses petitioner insisted testify.  RT at 179-84.  Clearly, petitioner was

7   aware that he and his trial counsel did not agree on certain matters.  Nevertheless, petitioner did

8   not request substitute counsel.

9          During the in camera hearing, the trial judge, prosecution and petitioner's trial

10  counsel discussed petitioner's desire to testify, the potential problems with that testimony and

11  trial counsel's belief that the testimony was not truthful.  None of that discussion influenced the

12  jury's verdict in any manner.

13         After the in camera hearing, petitioner was admonished by the trial judge that

14  petitioner should heed his attorney's advice, that his testimony could result in an implication of

15  guilt, and with regard to the potential sentencing consequences of such an implication.  RT at

16  194-95.  After being fully warned, petitioner was allowed to testify as he demanded.  RT at 198-

17  02.  There is no evidence that any of these events resulted in anything more than harmless error

18  or that petitioner's presence at the hearing would have changed the outcome of petitioner's trial.

19  Accordingly, petitioner is not entitled to relief on this claim.

20  /////

21         II.   Ineffective Assistance of Trial Counsel

22         Petitioner claims that his right to the effective assistance of trial counsel was

23  violated.  Specifically, petitioner claims that his trial counsel was ineffective as a result of

24  questioning petitioner in the presence of the jury as to whether petitioner was testifying against

25  his counsel's advice because that "sent a clear signal to the jury that he did not believe

26  petitioner's testimony . . . and [counsel] effectively [testified] against petitioner."  Traverse at 12.

14

Further, petitioner claims that his trial counsel was ineffective for failing to sever the trial on the failure to register as a sex offender count from the other counts. Id. at 4. The California Court of Appeal rejected these arguments reasoning as follows:

> Defendant next contends that counsel rendered ineffective assistance in that counsel informed the jury that defendant was testifying contrary to counsel's advice, sending a clear signal to the jury that counsel did not believe defendant's testimony, violating the attorney client privilege and effectively testifying against defendant. Further, defendant claims counsel failed to move to sever count 3, failure to register, from counts 1 and 2, both charging lewd and lascivious conduct. We find no prejudicial error.
>
> To establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient and that defendant suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 684-685, 687, 691-692 [80 L.Ed.2d 674, 691-692, 693, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.) On appeal, we "must reject a claim of ineffective assistance of counsel if the record 'sheds no light on why counsel acted or failed to act in the manner challenged ... unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation....'[Citations.]" (*People v. Riel* (2000) 22 Cal.4th 1153, 1216-1217.)
>
> Defendant argues that, in proceeding as he did, his attorney "went well beyond the permissible boundaries of the narrative approach, violated the attorney client privilege, and otherwise provided ineffective assistance of counsel when he introduced [defendant's] story by informing the jury that [defendant] was testifying against his advice."
>
> A defense counsel who knows his client intends to commit perjury may use the narrative form of questioning but may not announce to the fact finder that defense counsel disbelieves his client. (*People v. Guzman* (1988) 45 Cal.3d 915, 941-946, overruled on another point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13; *People v. Johnson* (1998) 62 Cal.App.4th 608, 629-630 (*Johnson* ).) "[T]he narrative approach represents the best accommodation of the competing interests of the defendant's right to testify and the attorney's obligation not to participate in the presentation of perjured testimony since it allows the defendant to tell the jury, in his own words, his version of what occurred, a right which has been described as fundamental, and allows the attorney to play a passive role." ( *Johnson, supra,* at p. 629.)
>
> "Disclosure [of the perjury to the court] has been criticized because it compromises the attorney's ethical duty to keep client communications confidential and results in a significant conflict of

interest between the attorney and his client if the attorney discloses to the court that the defendant has perjured himself." ( *Johnson, supra,* 62 Cal.App.4th at p. 623, fn. omitted.)

Defense counsel's question to defendant, which established that defendant was testifying against his attorney's advice did not necessarily signal to the jury that defendant was about to commit perjury or that defense counsel disbelieved defendant's testimony. The question just as likely informed the jury that, as a matter of strategy, defense counsel disagreed with defendant's decision to testify. The single question posed by defense counsel to defendant certainly did not amount to testifying against his client. *People v. Rodriguez* (1981) 115 Cal.App.3d 1018, cited by defendant, is inapplicable (defense counsel was called as a witness by the prosecution to testify on a material issue, that is, the lineup, where mistaken identification was the issue). Although the question probably violated the attorney-client privilege (see *People v. Hayes* (1999) 21 Cal.4th 1211, 1265), defendant can show no prejudice. Defendant's testimony was not credible and the prosecutor impeached him. While denying the charges against him in general, defendant spent most of his time telling the jury that he had received poor representation.

In sum, while counsel's question was inappropriate, we are convinced by any standard that defendant did not suffer prejudice by virtue of the fact that it knew defendant was testifying against his lawyer's advice.

Defendant further complains that counsel failed to move to sever count 3. Defendant argues there could be no tactical reason for counsel's failure to move to sever despite defendant's refusal to enter a plea.

Section 954 provides that an "accusatory pleading may charge two or more different offenses connected together in their commission, ... or two or more different offenses of the same class of crimes or offenses, under separate counts...."

Here, the lewd conduct and the failure to register were connected in their commission because all offenses occurred at S.'s home. Defendant molested A. while living with S. and failed to register with law enforcement while he was living with S. A.'s testimony proved the molestation charges as well as established that defendant lived at S.'s home.

"When, as here, the statutory requirements for joinder are met, a defendant must make a clear showing of prejudice to establish that the trial court abused its discretion in denying the defendant's severance motion. [Citations.] In determining whether there was an abuse of discretion, we examine the record before the trial court at the time of its ruling. [Citation.] The factors to be considered are these: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total

evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case. [Citation.] [¶] ... Although cross-admissibility ordinarily dispels any inference of prejudice [citation], the absence of cross-admissibility does not by itself demonstrate prejudice. [Citation.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 160-161.)

The evidence was probably cross-admissible in separate trials. Even if it was not, "the absence of cross-admissibility does not by itself demonstrate prejudice." (*People v. Mendoza, supra,* 24 Cal.4th at p. 161.) The evidence on all counts was strong. Defendant's prior conviction for violation of section 288, subdivision (a) was no more likely to inflame the jury than the current lewd and lascivious conduct charges involving A. The death penalty factor is not relevant here. Defendant cannot show that had the trial court been presented with a motion to sever that it would have been an abuse of discretion to deny such a motion. Thus, defendant cannot show that he suffered prejudice from counsel's failure to move to sever count 3.

Moreover, counsel recommended to defendant that he plead to count 3 but defendant refused, despite the overwhelming evidence on that count. Indeed, when defendant testified, he did not challenge the evidence relating to that count. Defendant was adamant about testifying and no doubt would have done so even if count 3 had been severed. Defendant testified and told the jury that he had been previously convicted of the same offense. He has failed to establish ineffective assistance of counsel.

Opinion at 18-23.

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally, competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"  Kimmelman v. Morrison,

17

1    477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There is in addition a strong

2    presumption that counsel "exercised acceptable professional judgment in all significant decisions

3    made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

4           Second, a petitioner must establish that he was prejudiced by counsel's deficient

5    performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

6    probability that, but for counsel's unprofessional errors, the result of the proceeding would have

7    been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

8    confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

9    F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

10   performance was deficient before examining the prejudice suffered by the defendant as a result

11   of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the

12   ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280

13   F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

14                      a.  Testifying Against The Advice Of Counsel

15          The right of a criminal defendant to testify in his own defense is well established

16   and is a "constitutional right of fundamental dimension."  United States v. Pino-Noriega, 189

17   F.3d 1089, 1094 (9th Cir. 1999) (quoting United States v. Joelson, 7 F.3d 174, 177 (9th Cir.

18   1993).  See also Rock v. Arkansas, 483 U.S. 44, 51 (1987).  An attorney should not inform the

19   court, in the presence of the jury, that a defendant is testifying against the advice of counsel.

20   U.S. v. Campbell, 616 F.2d 1151, 1152 (9th Cir. 1980).  Nevertheless, such a mistake "is one

21   which a reasonably competent attorney might make in an effort to comply with his ethical

22   duties."  Id.  Further, a defendant must still demonstrate prejudice from the error in order to

23   succeed on an ineffective assistance of counsel claim.  Id.  Petitioner has failed to demonstrate

24   such prejudice.  The record contains sufficient evidence of petitioner's guilt, most obviously the

25   testimony of the victim.  RT at 17-30.  Further, there is no evidence that the jury was influenced

26   by counsel's attempt to comply with his ethical duties.  Thus there is no evidence of any

18

1   prejudice.  Without evidence of prejudice, petitioner is not entitled to relief on this claim.

2                                 **b.**         <u>Failure To Sever</u>

3           A trial counsel's reasonable tactical decisions are "virtually unchallengeable."

4   <u>Strickland</u>, 466 U.S. at 690.  The decision of the California Court of Appeal that petitioner failed

5   to demonstrate prejudice with respect to this claim is not contrary to or an unreasonable

6   application of <u>Strickland</u> and may not be set aside.  For the reasons described by the state

7   appellate court, the result of the proceedings would not have been different if petitioner's trial

8   counsel had moved to sever the failure to register as a sex offender charge from the other charges

9   against petitioner for purposes of trial.  Accordingly, petitioner is not entitled to relief on this

10  claim.

11  /////

12          III.    <u>Failure to Hold A Marsden Hearing</u>

13          Petitioner claims his constitutional rights were violated by the trial court's refusal

14  to hold a <u>Marsden</u> hearing.[3]  Specifically, petitioner claims that he informed the court that he was

15  being "misrepresented," that the court asked petitioner if he would like a hearing to discuss the

16  issue, and that petitioner replied that he would, but the court proceeded without a hearing.

17  Petition at 5.

18          Petitioner raised this claim in his petitions to the California Court of Appeal and

19  the California Supreme Court, both of which issued silent denials.  Lodged Docs. No. 9-12.

20  Therefore this court will review the issue de novo.  <u>Nulph</u>, 333 F.3d at 1056; <u>Pirtle</u>, 313 F.3d at

21  1167.

22          The Sixth Amendment to the United States Constitution guarantees the right to

23  the assistance of counsel in a criminal prosecution.  Such assistance must be effective and

24  

25          [3] In <u>People v. Marsden</u>, 2 Cal. 3d 118 (1970), the California Supreme Court held that a

26  trial court must permit a defendant seeking a substitution of counsel after the commencement of the prosecution's case to specify the reasons for his request.

competent.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Where a defendant is proceeding with the assistance of counsel, he may move to dismiss or substitute his appointed or retained attorney.  The grant or denial of such a motion may depend on its timeliness and the nature of the conflict between the defendant and current counsel.  Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982); see also United States v. McClendon, 782 F.2d 785, 789 (9th Cir. 1986).  Refusal to allow substitution of attorneys may result in denial of the constitutional right to effective assistance of counsel if the defendant and his attorney are embroiled in an "irreconcilable conflict."  Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970).  The Sixth Amendment guarantee of the right to counsel and to effective assistance of counsel, however, does not include a right to "a 'meaningful relationship' between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 13-14 (1983).  Thus, "not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights."  Schell v. Witek, 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc).

In reviewing a trial court's decision to deny a motion to substitute counsel in the context of a § 2254 proceeding such as this, the focus is different than that on appeal.  In this regard, the Ninth Circuit in Schell explained:

> Our primary reason for accepting this case for en banc review was to correct the standard of review we have been using to examine the constitutionality of a state court's handling of a motion to substitute appointed counsel based on allegations of an irreconcilable conflict.  In Bland, we said that the test is whether a state court's denial of such a motion was for an "abuse of discretion."  Bland, 20 F.3d at 1475.
>
> * * *
>
> [O]ur only concern when reviewing the constitutionality of a state-court conviction is whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  See also Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct. 2546. 115 L.Ed. 640 (1991) ("The [habeas] court does not review a judgment but the lawfulness of the petitioner's custody simpliciter.") (emphasis in original).  A particular abuse of discretion by a state court may amount also to a violation of the Constitution, but not every state court abuse of discretion has the same effect.

218 F.3d at 1024-25 (footnotes omitted).

When a defendant indicates dissatisfaction with his counsel, the trial court ordinarily must conduct an inquiry in order to discover whether the situation is depriving the defendant of an adequate defense.  Id. at 1025 ("it is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds of such a motion, and that the matter be resolved on the merits before the case goes forward"); Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982) (the state trial court's summary denial of a defendant's motion for new counsel "without further inquiry" violated the Sixth Amendment.").  However, the inquiry need only be "as comprehensive as the circumstances reasonably would permit."  Id. at 831. Formal inquiry may not be necessary "where the defendant otherwise stated his reasons for dissatisfaction on the record."  United States v. Lott, 310 F.3d 1231, 1249 n.15 (10th Cir. 2002) (quoting United States v. Beers, 189 F.3d 1297, 1302 (10th Cir. 1999)) (quoting United States v. Willie, 941 F.2d 1384, 1391 (10th Cir. 1991)) (internal quotation marks and citations omitted). "[I]f the reasons proffered are insubstantial and the defendant receives competent representation from counsel, a court's failure to inquire sufficiently or to inquire at all constitutes harmless error."  Id.  See also United States v. Padilla, 819 F.2d 952, 956 n.1 (10th Cir. 1987) ("While the court did not conduct a formal inquiry into defendant's reasons for terminating appointed and retained counsel, the omission is harmless where the defendant otherwise stated his reasons for dissatisfaction.").  A trial court's failure to inquire into a motion for substitute counsel cannot be deemed prejudicial per se unless, as a result, the defendant is forced to proceed with representation that does not meet constitutional standards.  Schell, 218 F.3d at 1025-26.

> The ultimate constitutional question the federal courts must answer here is not whether the state trial court 'abused its discretion' in not deciding Schell's motion, but whether this error actually violated Schell's constitutional rights in that the conflict between Schell and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment.

1    Id. at 1026.

2          In the instant case, it was not necessary for the trial court to conduct an extensive

3    inquiry into petitioner's complaints about his trial counsel.  Petitioner fully explained his

4    concerns regarding his counsel in his exchange with the trial judge prior to the in camera

5    hearing.  RT 184-86.  The underlying problem appeared to be that petitioner felt his attorney had

6    not presented all possible witnesses and evidence.  The judge apparently believed that the best

7    way to resolve this problem was to allow petitioner to testify, with some latitude, as to his

8    concerns about the fairness of the trial and the evidence these witnesses would have proffered.

9    After testifying petitioner did not pursue any attempt to obtain substitute counsel and did not

10   raise any further complaints about trial counsel's performance.  A conflict inquiry is adequate if

11   it "ease[s] the defendant's dissatisfaction, distrust, and concern" and "provide[s] a 'sufficient

12   basis for reaching an informed decision.'"  Daniels v. Woodford, 428 F.3d 1181, 1200 (9th Cir.

13   2005) (quoting Adelzo-Gonzalez, 268 F.3d 772, 777 (9th Cir. 2001)) (citations omitted).  It

14   appears that the trial judge's handling of petitioner's complaints satisfied this test.  On the

15   present record this court is unable to conclude that the trial court's inquiry was inadequate.

16         There is also no evidence in the record that petitioner was deprived of the right to

17   counsel.  Petitioner did not allege in court, and it does not appear from the record, that an

18   irreconcilable conflict or a complete breakdown in communication existed between himself and

19   his trial counsel that prevented effective representation.  There is no indication that the

20   communication problems continued or that any conflict prevented petitioner's trial counsel from

21   representing petitioner in a competent manner.  In short, petitioner's allegations, even if true,

22   were insufficient to establish a Sixth Amendment violation.  Accordingly, it was not objectively

23   unreasonable for the state appellate court to conclude that petitioner's comments to the trial court

24   did not merit a formal Marsden motion hearing.  Cf. Schell, 218 F.3d at 1025 (defendant entitled

25   to a hearing on his motion for substitute counsel where his complaints, if true, revealed a "toxic

26   conflict with his lawyer" which might have resulted in the deprivation of any counsel at all);

1  Daniels, 428 F.3d at 1198 (where complete breakdown in communications between the

2  defendant and his counsel resulted in constructive denial of counsel, trial court violated the

3  defendant's Sixth Amendment rights by not questioning him after he brought the matter to the

4  attention of the court).

5         Because petitioner did not suffer a constructive denial of counsel, in order to be

6  entitled to relief he must demonstrate prejudice under Strickland v. Washington, 466 U.S. 668

7  (1984).  Schell, 218 F.3d at 1028 ("if the serious conflict did not rise to the level of a

8  constructive denial of counsel, however, Schell would have to prove he was prejudiced by the

9  conflict").  As the Ninth Circuit has stated:

10      The line between cases such as Brown, Slappy, and this case, on
   the one hand, and those in which the issue is ineffective assistance
11      of counsel, on the other, is sometimes unclear.  Logic alone
   dictates that the greater the hostility between the defendant and his
12      counsel, the longer the duration of the rupture in relations between
   the two, the less communication there is between them, and the
13      more ineffective the counsel's performance appears, the more
   likely it is that the case will be analyzed in terms of whether the
14      defendant was represented by counsel.  If so analyzed, a
   conclusion that no counsel existed invokes the full force of Gideon
15      v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
   If instead the conclusion is that representation did exist, the issue
16      then becomes whether the defendant received such ineffective
   assistance of counsel as to prejudice his defense.  We have
17      discussed this line between no-counsel cases and ineffective
   counsel cases previously.  (citations omitted.)  We adhere to those
18      discussions.

19      Having concluded, in effect, that the defendant in this case had
   counsel, we have considered the record from the standpoint of
20      whether a substitution should have been allowed on the ground
   that defendant's counsel was ineffective.  We find that no basis for
21      such an order existed. [Counsel] represented the petitioner
   effectively.
22 /////

23 Hudson v. Rushen, 686 F.2d at 832.  The same is true here.  A review of the record reflects that

24 petitioner's trial counsel performed competently at trial.  Accordingly, there is no basis to

25 conclude that a substitution of counsel should have been allowed on the ground that petitioner's

26 counsel was ineffective.

1    The decision of the California courts to reject petitioner's <u>Marsden</u> claim is not

2  contrary to or an unreasonable application of Sixth Amendment jurisprudence and should not be

3  set aside.  Therefore, petitioner is not entitled to relief on this claim.

4    IV.    <u>Ineffective Assistance of Appellate Counsel</u>

5    Petitioner claims that he was denied effective assistance of appellate counsel.

6  Specifically, petitioner claims that his appellate counsel was ineffective for failing to raise the

7  trial court's handling of petitioner's request for a <u>Marsden</u> hearing, discussed above, with the

8  appellate court.  Petition at 5.

9    Petitioner raised this claim in his petitions to the California Court of Appeal and

10  the California Supreme Court, both of which issued silent denials.  Lodged Docs. No. 9-12.

11  Therefore, this court will review the issue de novo.  <u>Nulph</u>, 333 F.3d at 1056; <u>Pirtle</u>, 313 F.3d at

12  1167.

13    The <u>Strickland</u> standards apply to appellate counsel as well as trial counsel.

14  <u>Smith v. Murray</u>, 477 U.S. 527, 535-36 (1986); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir.

15  1989).  However, an indigent defendant "does not have a constitutional right to compel

16  appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

17  professional judgment, decides not to present those points."  <u>Jones v. Barnes</u>, 463 U.S. 745, 751

18  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  <u>Id.</u>  Otherwise, the

19  ability of counsel to present the client's case in accord with counsel's professional evaluation

20  would be "seriously undermined."  <u>Id.</u>  <u>See also</u> <u>Smith v. Stewart</u>, 140 F.3d 1263, 1274 n.4 (9th

21  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

22  not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

23  meritless arguments on a client's behalf.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88 (requiring a

24  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

25  to raise a weak issue.  <u>See</u> <u>Miller</u>, 882 F.2d at 1434.  In order to demonstrate prejudice in this

26  context, petitioner must show that, but for appellate counsel's errors, he probably would have

24

1  prevailed on appeal.  Id. at 1434 n.9.

2  Petitioner has failed to demonstrate prejudice with respect to this claim.  As

3  discussed above, it appears from the record that the trial court conducted an adequate inquiry

4  into petitioner's concerns with his trial counsel.  Further, there is no evidence that petitioner

5  would have been entitled to the substitution of trial counsel, had he demanded such.  Thus, this

6  court cannot say that petitioner would have prevailed on appeal, but for appellate counsel's

7  failure to raise this issue.  As such, petitioner is not entitled to relief on this claim.

8  CONCLUSION

9  Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a

10  writ of habeas corpus be denied.

11  These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

13  days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16  shall be served and filed within ten days after service of the objections.  The parties are advised

17  that failure to file objections within the specified time may waive the right to appeal the District

18  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19  DATED: November 6, 2008.

20  CHARLENE H. SORRENTINO
   UNITED STATES DISTRICT COURT

21

22

23

24

25

26